**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| THE CITY OF GARY,                                    )<br>          Plaintiff,                                            )<br>                                                                   )<br>     v.                                                            )<br>                                                                   )<br>PAUL SHAFER d/b/a PAUL'S AUTO YARD,  )<br>PAUL'S AUTO YARD, INC.,                            )<br>          Defendants.                                        ) | CAUSE NO.:  2:07-CV-56-PRC |

**OPINION AND ORDER**

This matter is before the Court on the Defendants, Paul Shafer d/b/a Paul's Auto Yard and Paul's Auto Yard Inc.'s Motion to Dismiss Count Five of Plaintiff's Complaint for Damages [DE 17], filed on April 30, 2007, and the Defendants, Paul Shafer d/b/a Paul's Auto Yard and Paul's Auto Yard Inc.'s Motion to Dismiss Count Six of Plaintiff's Complaint for Damages [DE 19], filed on April 30, 2007.  On May 15, 2007, the Plaintiff the City of Gary filed responses in opposition to the Defendants' Motions to Dismiss.  On May 22, 2007, the Defendants filed replies.  For the following reasons, the Court grants the Defendants' Motions to Dismiss Counts Five and Six of the City of Gary's Complaint.

**PROCEDURAL BACKGROUND**

On February 26, 2007, the City of Gary filed its Complaint for Damages, alleging that the Defendants polluted a business lot located at 2124 Colfax Street, Gary, Indiana ("the Property"), in violation of sections 107 and 113 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"); Indiana's Environmental Legal Action Statute, Indiana Code § 13-30-9-2; and the Gary Environmental Ordinance section 95.204.  The City of Gary also alleges that

1

the Defendants are liable under Indiana nuisance law, codified at Indiana Code § 32-30-6-7, for: (i) releasing hazardous substances onto the Property; (ii) wrongfully injuring the City's Property; and (iii) interfering with the City's use and enjoyment of the Property.

The City of Gary asserts that it is entitled to recover direct and consequential damages for the alleged nuisance. The City of Gary further contends that pursuant to CERCLA § 113 and Gary Environmental Ordinance section 95.204, it is entitled to contribution based on costs expended and those that will be expended in investigating and remediating the hazardous substances at the Property.

On April 30, 2007, the Defendants filed their Answer to the Complaint as well as Motions to Dismiss the City of Gary's Count Five nuisance and Count Six CERCLA § 113 claims with supporting briefs. The Motions are now fully briefed and before the Court.

The parties consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Thus, this court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636.

**FACTUAL BACKGROUND**

The following facts are drawn from the City of Gary's Complaint and its Memoranda in Opposition to the Defendants' Motions to Dismiss.

The City of Gary is a political subdivision of the State of Indiana, located in Lake County. The Defendant, Paul Shafer, owned and operated the Defendant Paul's Auto Yard, Inc. The Defendants operated their business on the Property, the environmental condition of which is the subject of this lawsuit.

Defendant Paul Shafer purchased the Property in 1981 and opened a salvage yard business. Shafer operated the salvage yard from 1981 until 1988, when he created Paul's Auto Yard, Inc., which was incorporated on March 13, 1988. Paul's Auto Yard, Inc. hauled, stored, recycled, and disposed of wrecked or unsalvageable automobiles and automobile parts. Shafer was the sole owner of Paul's Auto Yard, Inc.

In 1991, the Defendants sold the Property to Waste Management of Indiana, LLC ("Waste Management"). After the sale, Paul's Auto Yard, Inc. continued operations on the Property until it closed in 1994. Waste Management owned the Property from 1991 to 1998, but never operated a business at that location.

During Waste Management's ownership of the Property, the City of Gary levied property and operation taxes on Waste Management. When Waste Management became delinquent in payment of those taxes, the City brought suit against the company. In November 1998, the litigation ended with a settlement whereby the City of Gary received the Property and the City of Gary Redevelopment Commission received $100,000. The Commission planned to spend the money on environmental inspections, title verification, and any other activity deemed necessary in improving the development of the Property.

Once the City of Gary received the Property, it conducted an environmental investigation to determine its condition. The investigation revealed lead and metals in the soil at levels that exceeded the Indiana Department of Environmental Management's ("IDEM") cleanup regulations. In 2004, the City of Gary contracted with an outside environmental investigation company to further investigate the Property's condition. Following the investigations, the City of Gary concluded that the Defendants were responsible for contaminating the Property. The instant Opinion and Order

3

analyzes the City of Gary's Count Five nuisance and Count Six CERCLA § 113 claims against the Defendants.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a 12(b)(6) motion to dismiss, the complaint must first comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, — F.3d —, 2007 WL 2215764, *2 (7th Cir. Aug. 3, 2007) (quoting *Bell Atlantic*, 127 S.Ct. at 1965, 1973 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic*, 127 S.Ct. at 1969. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. *See Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005). In ruling on such a motion, the Court may consider the complaint, the answer, and any written instruments attached to the complaint as exhibits. *See Beanstalk Group, Inc. v. AM Gen. Corp.*, 283 F.3d 856, 858 (7th Cir. 2002); *Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir. 1988).

4

**ANALYSIS**

In each Motion to Dismiss, the Defendants move to dismiss one of the claims asserted in the City of Gary's Complaint.  First, the Defendants move to dismiss the City of Gary's nuisance claim, Count Five of the Complaint, on the basis that pursuant to Indiana law, a current owner of property cannot sue a prior owner of that same property for nuisance.  Second, the Defendants move to dismiss the City of Gary's CERCLA § 113 claim, Count Six of the Complaint, on the basis that the City of Gary was never subject to a civil action under CERCLA § 106 or § 107(a), and thus fails to meet a necessary prerequisite to bring such a claim.  The Court will consider each of the Defendants' Motions to Dismiss separately.

**A.  Nuisance claim**

The City of Gary asserts a nuisance action premised on allegations that the Defendants "wrongfully injured" and "interfered with the City's use and enjoyment of the Property." Compl. ¶ 75.  The Defendants argue that because they owned the Property before the City of Gary acquired it, they cannot be held liable for an alleged nuisance.

In Indiana, a nuisance is defined as "[w]hatever is injurious to health; indecent; offensive to the senses; or an obstruction to the free use of property; so as essentially to interfere with the comfortable enjoyment of life or property..." Ind. Code § 32-30-6-6.  Nuisance law is divided into two categories: private nuisance and public nuisance.  In Indiana, courts have held that a private nuisance "affects only a single person or a determinate number of people." *Wernke v. Halas*, 600 N.E.2d 117, 120 (Ind. Ct. App. 1992).  "The essence of a private nuisance is the use of property to the detriment of the use and enjoyment of another's property." *Id.* (citing *Cox v. Schlatchter*, 262 N.E.2d 550, 553 (Ind. App. 1970)).  On the other hand, a public nuisance is "caused by unreasonable

5

interference with a common right." *Ind. Limestone Co. v. Staggs*, 672 N.E.2d 1377, 1384 (Ind. Ct. App. 1996). Further, a public nuisance affects an entire community or neighborhood, while the effect of a private nuisance is peculiar to an individual or a limited number of individuals. *See Wendt v. Kirkhof*, 594 N.E.2d 795, 797 (Ind. Ct. App. 1992).

It is helpful for the Court to initially define the City of Gary's claim as one for either private or public nuisance. The City of Gary alleges that its claim should be analyzed under the theory of public nuisance because it brings the claim pursuant to its police powers as a municipality. The Defendants argue that the City of Gary's claim should be analyzed under the theory of private nuisance. The Property belongs to the City of Gary, a public entity, but the alleged nuisance has not interfered with any "common right" of the public. The City of Gary alleges in its Complaint that the Defendants' conduct injured "the City's Property and interfered with the City's use and enjoyment of the Property." Compl. ¶ 75. Thus, the City of Gary's allegations establish that the alleged nuisance affected a single piece of property and its single municipal entity owner. The Court therefore finds that the City of Gary's nuisance allegation is for a private nuisance and it does not rise to the level of broad effect that would justify classifying it as a public nuisance.[1]

Turning to the substantive argument, the Defendants seek to dismiss the City of Gary's nuisance claim on the basis that a buyer of property cannot sue a prior owner of that same property for nuisance. In support of this argument, the Defendants rely on *Lilly Industries, Inc. v. Health-Chem Corp.*, 974 F.Supp. 702 (S.D. Ind. 1997). In *Lilly*, the court sought to determine whether the purchaser of an industrial plant could sue the previous owner of the plant pursuant to a nuisance

---

[1] This is not to say that the City of Gary could successfully assert a claim for public nuisance against a former real property owner. The Court categorizes the instant claim as one for private nuisance in order to narrow the focus of its analysis.

6

claim for the costs of cleaning up environmental contamination allegedly caused by the previous owner. The court, in denying the plaintiff's attempt to use a nuisance claim in such a manner, explained that "a buyer of property may not sue a prior owner for nuisance based on activities undertaken on the same property and alleged to have harmed the same property." *Id.* at 708.

The underlying rationale for denying a plaintiff's nuisance claim against a former property owner is that nuisance law is meant to protect neighboring landowners from conflicting uses of the property; not successor landowners from conditions on land they purchased. *See id.* at 706-08. The *Lilly* court further explained, "The law of private nuisance has developed on the assumption that the parties to a nuisance case do not have prior contractual relationships with one another in which their interests might have been resolved by agreement." *Lilly*, 974 F.Supp. at 706 (citing *Phila. Elec. Co. v. Hercules, Inc.*, 762 F.2d 303 (3d Cir. 1985)). A purchaser has the ability to negotiate with the property's seller to account for any defects in the property. However, concurrent neighbors do not have such an ability. The law of nuisance is intended to be used by parties who are concurrent property owners and did not make a purchasing agreement for the property, and as a result, were unable to contractually account for any underlying conditions that may be a nuisance. *See id.*; *Wickens v. Shell Oil Co.*, No. 1:05-CV-645, 2006 WL 3254544 (S.D. Ind. Nov. 9, 2006); *McFarland Foods Corp. v. Chevron USA, Inc.*, No. IP 99-1489-C, 2000 WL 684265 (S.D. Ind. May 16, 2000).

The City of Gary, attempting to evade the underlying rationale behind the restriction against nuisance actions against former property owners, argues that its acquisition of the Property is not subject to the standard nuisance law because it acquired the Property without engaging in any contract negotiations directly with the Defendants. Following the *Lilly* holding, the court in *Wickens* noted, "undiscovered environmental pollution on real property seems to have fostered imaginative

7

attempts to construct or expand on a common law tort theory of recovery ... these efforts have not found support under Indiana law since the state courts have declined to utilize ... nuisance doctrines to resolve environmental clean-up disputes." *Wickens*, 2006 WL 3254544 at *6. Here, the City of Gary acquired the Property from Waste Management, which previously bought the Property from the Defendants. The indirect chain of ownership from the Defendants to the City of Gary is unsupportive of the City's argument. The City had an opportunity to negotiate for the Property with Waste Management, which previously had an opportunity to negotiate with the Defendants. For purposes of resolving any outstanding nuisance liability, the Defendants finalized their security by selling the Property to Waste Management. The common law of nuisance is not designed to create an expansive new area of tort law, which is precisely what could happen if the City's argument were adopted by this Court. The Court refuses to create a new category of private nuisance law and therefore denies the City of Gary's request to hold the Defendants liable as a former owner that the City was unable to negotiate with.

The City of Gary next alleges that it cannot be considered a "purchaser" as contemplated by nuisance law because it acquired the Property in a tax settlement with Waste Management. The City believes that because it did not purchase the Property through a conventional money transfer, it is not a subsequent owner as defined by Indiana nuisance law. The City applies too limited a definition to "purchaser." The purchaser term appears in a judicially created rule, which states that a purchaser of property cannot sue a prior owner for nuisance. *See Lilly*, 974 F.Supp. at 702. The use of the term purchaser in this rule does not limit its application to a cash buyer. Even under the City of Gary's definition of "purchaser," defined in its briefing as "a party that obtains property from another for either money or other valuable consideration," the City of Gary qualifies. Pl.'s Opp'n

8

Def.'s Mot. to Dismiss at 5.[2]  In acquiring the Property, the City of Gary received $100,000 from Waste Management, presumably through negotiation, and in return the City forgave a tax debt owed by Waste Management.  Although the City of Gary acquired the Property in a nonconventional manner, it still received valuable consideration, and gave something in exchange for the valuable consideration.  As a result, the City of Gary is properly classified as a "purchaser" and is subject to Indiana nuisance law.

Finally, the City of Gary contends that as a municipality, it should not be held to the normal private nuisance rules because it acquired the Property and brought this lawsuit using its police powers.  However, generally in the scope of private nuisance, a plaintiff's status as a public entity does not change established private nuisance law principles.  *See Metro. Water Reclamation Dist. of Greater Chicago v. Lake River*, 365 F.Supp.2d 913, 918-19 (N.D. Ill 2005) (holding that under Illinois law, plaintiff, a municipal corporation and subsequent property lessor, had no claim of nuisance against a former lessee of property when seeking to recover costs incurred in cleaning up chemicals spilled or released onto the property; *aff'd on other grounds Metro. Water Reclamation Dist. of Greater Chicago v. North Am. Galvanizing & Coatings, Inc.*, 473 F.3d 824 (7th Cir. 2007).  The City failed to provide the Court with case law in which a municipality successfully sued a prior owner of property on a private nuisance theory.  More importantly, relevant private nuisance law does not reflect a tendency to exempt municipalities from established nuisance law principles.

Thus, the Court finds that the City of Gary is unable to state a claim for nuisance against the Defendants because the Defendants relinquished their ownership and control of the Property a decade before the City filed this lawsuit.  It is well-settled law in Indiana that a purchaser of land

---

[2] The City later defines "purchasers" as "private entities" but provides no support for this definition and the Court declines to rely on it.

cannot sue a prior owner for nuisance. For the above reasons, the Court grants the Defendants' Motion to Dismiss the City of Gary's Count Five nuisance claim.

### B.  CERCLA §113 claim

The Defendants also seek to dismiss the City of Gary's CERCLA § 113 claim, which seeks contribution for costs expended by the City remediating the Property. The Defendants contend that there are necessary prerequisites to filing an action under section 113 and that those prerequisites did not occur here. The City alleges that it "is entitled to recover an equitable portion, based on the proportional liability of the Defendants, of its past response costs, and of any future response costs that are necessary to remediate the Property ..." Compl. ¶ 83.

The stated purpose of CERCLA is to "provide for liability, compensation, cleanup and emergency response for hazardous substances released into the environment and the cleanup of inactive hazardous waste disposal sites." H.R.Rep. No. 96-1016 (1980). Recently, the Seventh Circuit explained that CERCLA was enacted for two reasons: (1) to "'establish a comprehensive response and financing mechanism to abate and control the vast problems associated with abandoned and inactive hazardous waste disposal sites;'" and (2) "to shift the costs of cleanup to the parties responsible for the contamination." *Metro.Water Reclamation Dist.*, 473 F.3d at 827 (quoting H.R.Rep. No. 96-1016; citing *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483 (1996)). When first enacted, CERCLA did not provide for contribution. However, in 1986 Congress amended CERCLA to include the Superfund Amendments and Reauthorization Act ("SARA"). *See* SARA, Pub.L. No. 99-499, 100 Stat. 1613. SARA added an express right of contribution to CERCLA, which provides, "Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or

10

under section 9607(a) of this title." 42 U.S.C. § 9613(f)(1). In addition, SARA, in section 113(f)(3)(B) provides, "A person who has resolved its liability to the United States or a state for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement." 42 U.S.C. § 9613(f)(3)(B).

The United States Supreme Court, in dicta, found that these provisions create "two express avenues for contribution: § 113(f)(1) ('during or following' specified civil actions) and § 113(f)(3)(B) (after an administrative or judicially approved settlement that resolves liability to the United States or a State)." *Cooper Indus., Inc. v. Availl Services, Inc.*, 543 U.S. 157, 167 (2004) (quoting 42 U.S.C. § 9613(f)(1)). The Seventh Circuit adopted this reasoning in *Metro. Water Reclamation Dist.*, stating that "a party first must have settled its liability with a government entity or been sued, either for costs under § 107(a) or for compliance under § 106, before it may look to other responsible parties for contribution under § 133(f)(1)." 473 F.3d at 830.

In their briefing, the Defendants focus their arguments exclusively on section 113(f)(1) and argue that the City of Gary cannot maintain a section 113 claim because it was not first the subject of section 106 or 107 litigation. The City of Gary concedes that no section 106 or 107 litigation was filed, but argues that it can properly bring a section 113 claim pursuant to section 113(f)(3)(B). The City contends that it resolved any potential liability to the state and federal government with regard to the Property through a Voluntary Remediation Agreement ("VRA" or "Agreement") that it reached with the State of Indiana. The City states that after it acquired the Property from Waste Management, it conducted an environmental investigation to determine how to best revitalize the Property. When the investigation revealed levels of lead and heavy metals in the soil that exceeded

11

the Indiana Department of Environmental Management's ("IDEM") criteria, the City of Gary and the IDEM entered into the VRA to remediate the Property. The City believes that by entering into the VRA, it has not only resolved its liability to the state of Indiana, but also to the United States through the Environmental Protection Agency ("EPA").

Interpreting section 113(f)(3)(B) in the context of CERCLA as a whole provides clarity that section 113(f)(3)(B) is not concerned with a party resolving all liability to the federal government or a state government. Rather, section 113(f)(3)(B) is concerned with potential CERCLA liability. In *City of Waukesha v. Viacom Int'l Inc.*, the plaintiff believed that it had resolved its liability to the State of Wisconsin by way of a "cost share pilot program" contract entered into with the Wisconsin Department of Natural Resources ("WDNR"). 404 F.Supp.2d 1112,1115 (E.D. Wis. 2005). Thus, the plaintiff argued that it could assert a claim for contribution pursuant to CERCLA section 113(f)(3)(B). The court, narrowing its analysis, opined that the key liability was potential CERCLA liability. *Id*. at 1115. The court found that "'section 113(f)(3)(B) [creates] a contribution right only when liability for CERCLA claims, rather than some broader category of legal claims is resolved.'" *Id*. (citing *Consol. Edison Co. of New York, Inc. v. UGI Utilities, Inc.*, 423 F.3d 90, 95 (2d Cir. 2005)). Finding that the agreement "left open the possibility" of CERCLA liability, the court held that the plaintiff could not prevail on a section 113(f)(3)(B) contribution claim. *City of Waukesha*, 404 F.Supp.2d at 1115.

To conclude that potential CERCLA liability is the key issue under section 113(f)(3)(B), the Court looks to the statutory language of the section and to that of CERCLA as a whole. The phrase "response action" used in section 113(f)(3)(B) is a CERCLA specific term. *See id*.; *UGI Utilities*, 423 F.3d at 95-96. It is a term used by CERCLA to describe site cleanup or action taken to

12

minimize contaminants released in the future. *See* 42 U.S.C. §§ 9601(23), 9601(24), 9601(25); *UGI Utilities*, 423 F.3d at 95-96. Thus, based on the language of CERCLA, potential CERCLA liability must be resolved prior to seeking contribution under section 113(f)(3)(B).

In trying to determine whether the City of Gary resolved its CERCLA liability, the Court examines the City's Agreement with IDEM in detail. Two provisions emerge as most relevant to the analysis. First, the Compliance with Applicable Laws section of the VRA, paragraph 28 provides:

> Nothing in this Agreement, the Certificate of Completion, or the Covenant Not to Sue shall be construed to relieve the [City of Gary] of any natural resource damage liability arising from contaminants, even if addressed by the Remediation Work Plan, including under the following authorities: 42 U.S.C. § 9601 *et seq.* (CERCLA) ...

VRA at ¶ 28. Second, the Reservation of Rights section of the VRA, paragraph 59 provides:

> IDEM reserves the right to bring an action, including an administrative action, against [the City of Gary] for any violations of statutes or regulations except for the specific violations or releases that are being remediated in the Remediation Work Plan.

*Id.* at ¶ 59. The Court finds that paragraph 59 precludes IDEM from bringing a claim against the City of Gary for specific violations or releases that the City is remediating in the Remediation Work Plan. Paragraph 28, on the other hand, states that the City is not relieved of liability, and specifically CERCLA liability, for environmental damage, even if the damage is addressed by the Remediation Work Plan. From this reading, the two provisions seem to be at odds. However, the scope of the provisions' application allows for a consistent reading, at least for the Court's purposes in this Opinion and Order. Paragraph 59 contemplates the City of Gary's future liability for actions filed by IDEM. Paragraph 28 is broader, and states that the City of Gary remains liable under CERCLA. Paragraph 28 allows for liability in actions filed by the EPA or other local or national agencies. As

13

a result, the VRA does not preclude the City from future CERCLA liability. The only liability precluded from a reading of the two provisions are actions filed against the City of Gary by IDEM that concern the specific provisions of the Remediation Work Plan.

The City of Gary also attached the following documents to its briefing: (1) a Memorandum of Agreement between [sic] IDEM and the US EPA for the Indiana Voluntary Remediation Program, and (2) an Addendum Superfund Memorandum of Agreement. The Memorandum of Agreement between IDEM and the EPA states that the EPA will not participate in any federal action against a party that receives a Certificate of Completion. A Certificate of Completion is issued to a party that completes voluntary remediation of an identified property. The Addendum Agreement similarly states, "[when] IDEM has issued a Certificate of Completion for [a] site, Region V [of the EPA] will not plan or anticipate any federal action under [CERCLA] unless, in exceptional circumstances, the site poses an imminent and substantial threat to human health or the environment." Pl.'s Opp'n Def.'s Mot. to Dismiss Appx. at 4-4. Here, whether the Property is an exceptional circumstance that would warrant CERCLA prosecution by the EPA is a question not before the Court; but the Court cannot ignore the fact that potential CERCLA liability remains. In addition, and of more importance to the Court's analysis, the City of Gary has not alleged that it received a Certificate of Completion for its remediation of the Property, nor has it attached a Certificate of Completion to its briefing. Thus, CERCLA liability remains.

Therefore, the Court is unable to find that the City of Gary successfully states a claim under section 113 for contribution against the Defendants. Both the Supreme Court in *Cooper* and the Seventh Circuit in *Metro. Water Reclamation Dist.* made it clear that in order to sue for contribution, the City must have either settled its CERCLA liability or have been sued under CERCLA § 106 or

14

§ 107(a). It is evident in this case that the City of Gary has neither settled its CERCLA liability nor been sued under the pertinent CERCLA sections. The Court therefore finds that the City of Gary has not successfully alleged a cause of action for contribution under CERCLA § 113 and the Court grants the Defendants' Motion to Dismiss the City of Gary's Count Six CERCLA § 113 claim.

## CONCLUSION

For the forgoing reasons, the Court **GRANTS** the Defendants, Paul Shafer d/b/a Paul's Auto Yard and Paul's Auto Yard Inc.'s Motion to Dismiss Count Five of Plaintiff's Complaint for Damages [DE 17], and **GRANTS** the Defendants, Paul Shafer d/b/a Paul's Auto Yard and Paul's Auto Yard Inc.'s Motion to Dismiss Count Six of Plaintiff's Complaint for Damages [DE 19]. Following this Court's Orders dated October 4, 2007, Counts One, Two, and Four remain pending.

SO ORDERED this 4th day of October, 2007.

s/Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:   All counsel of record