**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| THE CITY OF GARY, )<br>      Plaintiff, )<br> )<br>     v. )<br> )<br>PAUL SHAFER d/b/a PAUL'S AUTO YARD, )<br>and PAUL'S AUTO YARD, INC., )<br>      Defendants, )<br>                                         )<br> )<br>PAUL SHAFER d/b/a PAUL'S AUTO YARD, )<br>and PAUL'S AUTO YARD, INC., )<br>      Third-Party Plaintiffs, )<br> )<br>     v. )<br> )<br>WASTE MANAGEMENT SYSTEMS )<br>a/k/a WASTE MANAGEMENT OF )<br>INDIANA, L. L.C., )<br>      Third-Party Defendant, )<br>                                         )<br> )<br>PAUL SHAFER d/b/a PAUL'S AUTO YARD, )<br>and PAUL'S AUTO YARD, INC., )<br>      Counter-Claimants, )<br> )<br>     v. )<br> )<br>THE CITY OF GARY, )<br>      Counter-Defendant. ) | CAUSE NO.: 2:07-CV-56-PRC |

**OPINION AND ORDER**

On May 25, 2011, Bench Trial proceedings were held in Hammond, Indiana. Plaintiff City of Gary appeared by its Environmental and MS4 Coordinator Doreen Carey and by counsel Michael O. Nelson. Defendants Paul Shafer d/b/a Paul's Auto Yard and Paul's Auto Yard, Inc. appeared by Paul Shafer and by counsel Michael J. Maher and John P. Arranz. Third-Party Defendant Waste Management Systems a/k/a Waste Management of Indiana, L.L.C. appeared by counsel Michael J.

Hughes. The Court received evidence.

In determination of the issues the Court **FINDS**, **ORDERS**, **ADJUDGES**, and **DECREES**:

## PROCEDURAL BACKGROUND

1. Here incorporated by reference is the Procedural Background set forth in the Court's February 10, 2010, Opinion and Order [DE 170] at paragraphs 1 through 14.

2. On November 2, 3, 4, and 5, 2009, the liability phase of the Bench Trial was held. By agreement of the parties, trial on the damages issues (allocation of responsibility) was bifurcated from trial on the liability issues.

3. On May 25, 2011, the damages phase (allocation of responsibility) of the Bench Trial was held. The parties agreed that the sole damages issue for the Court to determine is the allocation of the corporation Paul's Auto Yard, Inc.'s proportionate share of the total liability. The parties agreed that the Court need not determine the allocation of the other parties' and non-parties' proportionate share of total liability nor any amount of money damages.

4. Following the May 25, 2011, Bench Trial proceedings, the Court ordered the parties to file proposed Findings of Fact and Conclusions of Law.

5. On August 1, 2011, both the City of Gary and Paul's Auto Yard, Inc., filed separate

proposed Findings of Fact and Conclusions of Law.

**CONTEXT**

6. The Court refers the reader of the instant August 5, 2011, Opinion and Order to the Court's February 10, 2010, Opinion and Order [DE 170] in this case for context and background.

**FINDINGS OF FACT**

7. The Court previously found that Paul's Auto Yard, Inc., did only *de minimus* moving of soil (release or disposal) at the Site, limited to lifting some dirt that was interspersed in piles of tires and slightly moving the dirt, and only at the time of closing Paul's Auto Yard, Inc.'s business operations at the Site. At the time of this minimal movement of soil (release or disposal) between December 1991 and late 1993, the corporate entity Paul's Auto Yard, Inc. was an operator of business at the Site. *See* Feb. 10, 2010 Opinion and Order [DE 170], ¶ 86.

8. Substantial contamination of the soil at the site with a hazardous substance (lead) occurred frequently over a long period of time from sometime in the 1950's (when LeRoy Shafer owned the property and committed contamination) through some unspecified period of time after 1993 (when Waste Management owned the property and committed contamination).

9. Paul's Auto Yard, Inc.'s release or disposal (*de minimus* moving of contaminated soil) occurred only during a relatively short period of time which falls somewhere within the time

3

period of 1991-1993.

10. Paul's Auto Yard, Inc.'s release or disposal (*de minimus* moving of contaminated soil) was limited to lifting some dirt that was interspersed in piles of tires and slightly moving the dirt. *See* Feb. 10, 2010 Opinion and Order [DE 170], ¶ 86.

11. In contrast, substantial contamination of the soil was caused by LeRoy Shafer over a time period of decades, by the City of Gary over a time period of decades, and by Waste Management during or after 1993 and continuing over an unspecified period of time.

12. The total time period during which soil contamination at the site occurred was at least from 1955 (an estimate based on trial evidence) through at least 1993, a time period of approximately 38 years; the time period during which Paul's Auto Yard, Inc. did its *de minimus* moving of contaminated soil was, at most, approximately 1.5 years (the actual moving of the soil probably took less time than that).

13. Thus, in terms of length of time, Paul's Auto Yard, Inc. caused release and disposal of hazardous waste during, at most, approximately 3.95% of the total estimated time.

14. Geologist Geoffrey A. Glanders testified that the tire pile removed by Paul's Auto Yard, Inc., (thereby slightly moving contaminated soil in the tire pile) was approximately 130 feet wide (east to west) by approximately 150 feet long (north to south) in dimension. (Its height

4

is unknown, but not relevant, since the soil was at the bottom of the tire pile.) This testimony is accepted as a finding herein.

15. Geologist Geoffrey A. Glanders also testified that the maximum depth of the disturbed soil was approximately eight inches, only a small portion of the tire pile contained lead-contaminated soil, and the contaminated soil in the tire pile was no more than 0.1% to 0.24% of the total volume of contamination at the western property (Section 2) and the eastern property (Section 3). This testimony is accepted as a finding herein.

16. Regardless of how much time it took, Paul's Auto Yard, Inc.'s proportionate share in the lead contamination of the soil (by its *de minimus* moving of the soil) constituted no more than 0.24% of the whole of the contamination.

## CONCLUSIONS OF LAW

17. The Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601-9675, imposes liability for the release of hazardous substances at a site on four classes of potentially responsible parties (PRP's):
    (1) an owner-operator of a facility;
    (2) an owner-operator at the time of disposal of a hazardous substance;
    (3) any person who arranges for disposal of a hazardous substance; or
    (4) any person who accepts hazardous waste for treatment.

42 U.S.C. §9607(a)(1)–(4).

18. Once an entity is identified as a PRP, it is liable to pay for the costs of removal or remediation by a governmental entity and for response costs incurred by any other person, among other costs. 42 U.S.C. § 9607(a)(4)(A) and (B).

19. Although CERCLA "impose[s] a strict liability standard, it d[oes] not mandate joint and several liability in every case." *Burlington N. & Santa Fe Ry. v. United States*, 129 S. Ct. 1870, 1880-81 (2009) (quotations omitted). Liability may be apportioned, if appropriate.

20. Equitable considerations play no role in the determination of whether joint and several liability is appropriate or whether liability should be apportioned between the parties in a given case. *Burlington*, 129 S. Ct. at 1882, n.9.

21. The starting point for analysis of divisibility of harm in CERCLA cases is § 433A of the Restatement (Second) of Torts. *Burlington*, 129 S. Ct. at 1881.

22. Under the Restatement (Second) of Torts, "[d]amages for harm are to be apportioned among two or more causes where (a) there are distinct harms, or (b) there is a reasonable basis for determining the contribution of each cause to a single harm." Restatement (Second) of Torts § 433A.

23. CERCLA provides an express right of contribution among liable parties, and provides that the "court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f).

24. As with CERCLA, the Court must allocate a percentage of contribution between or among parties under the Indiana Environmental Legal Actions (ELA) statute. Ind. Code § 13-30-9-3 (2011). Under the ELA, liability is not joint and several. Ind. Code § 13-30-9-3(a) (2011). The Court must allocate costs in proportion to the acts or omissions of each party without regard to any theory of joint and several liability using legal and equitable factors that the Court determines are appropriate. *Id*.

## CONCLUSION

25. It is appropriate to apportion liability in this case. Joint and several liability is inappropriate. Equitable factors are appropriate in allocation analysis under CERCLA and the Indiana ELA statute and therefore will be applied in this case.

26. In this case, Paul's Auto Yard, Inc., slightly moved no more than 0.24% of the total volume of lead-contaminated soil and did so during a relatively short period of time.

27. This is a reasonable, objective, measurable, concrete, specific basis for allocation of liability in this case. It is a reasonable basis for determining the contribution of Paul's Auto Yard, Inc., to the single harm in this case.

28. The Court hereby **FINDS** and **ORDERS** that the allocation to Paul's Auto Yard, Inc., of its percentage of required contribution to the total response costs and other CERCLA and ELA costs in this case is 0.24% of the total costs.

29. The parties have asked the Court to allocate only Paul's Auto Yard, Inc.'s percentage share of the total amount of costs in this case; they have not asked the Court to allocate proportionate share of the other parties' total costs.

## FINAL JUDGMENT

30. This Court's February 10, 2010 Opinion and Order [DE 170] combined with the instant August 5, 2011 Opinion and Order [DE 199] together constitute final judgment in this case; they resolve all issues set before the trial Court by the parties.

So **ORDERED** this 5th day of August, 2011.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record